IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOE GARDNER                                                                                              PLAINTIFF

vs.                                              CASE NO. 4:04CV1459GH

SELECT SPECIALTY HOSPITAL
LITTLE ROCK, INC.                                                                                   DEFENDANT

## ORDER

Plaintiff brings this action alleging that defendant violated his rights under the Family Medical Leave Act ("FMLA") and the Arkansas Civil Rights Act ("ACRA") when he was discharged. Plaintiff has filed a motion for partial summary on his FMLA claim.

Plaintiff is a licensed practical nurse (LPN) who worked for defendant. In April, 2004, plaintiff was diagnosed as suffering from Hepatitis C. Hepatitis C is a chronic, long-term illness that infects the liver. Plaintiff also suffered from depression and his physician, Dr. Holland, had prescribed Lexapro for the depression. Plaintiff was also diagnosed with cirrhosis, a condition where the liver has been damaged and attempts to heal itself, which results in scars on the liver. Because of liver malfunction, the liver does not metabolize and produce enough stable glucose in the bloodstream to keep the blood sugar elevated to a level that gives the body nutritional fuel on which to operate, causing the brain to be hazy and the body to be weak. This condition is called hypoglycemia. Plaintiff received treatment for his ailments, although there is a question as to how often he visited the doctors and the type of treatment he received.

Plaintiff worked the 7:00 p.m to 7:00 a.m. shifts on Friday, Saturday and Sunday evenings. On Friday, July 16, 2004, plaintiff went to work. Later that evening, plaintiff asked his supervisor at the time, Al Holden, for permission to leave to take care of some business at home. Holden initially denied the request because

he could not find anyone to fill in for plaintiff at that hour.  Later, plaintiff asked if it would be acceptable for his girlfriend, Peggy Butler, also a nurse to complete his shift.  Holden approved of that.  Sometime closer to midnight, plaintiff asked if he could take a 30-minute break to take care of his business.  Holden permitted plaintiff to leave for a thirty minute lunch break., however, he did not give permission for plaintiff to remain off for the remainder of his shift unless he found a replacement to work for him.  Butler could not work for plaintiff.

Plaintiff went home, ate some food and then proceeded to return to work.  According to plaintiff, as he was driving back to work, he became dizzy, and felt detached, so he pulled over and passed out around Park Plaza Mall.  This occurred sometime around 2:30 and 3:00 a.m.  Plaintiff called Butler, and had her bring him home.

Butler took a reading of plaintiff's blood sugar which was very low; she then gave him some glucose tablets to raise his blood sugar. Plaintiff did not return to work.  He states that he called Holden between 4:00 a.m. and 6:00 .a.m.  It is somewhat unclear what plaintiff told Holden, although plaintiff and Holden agreed that plaintiff did mention something about blood sugar.  Holden believed he knew that plaintiff had Hepatitis C.  He also was aware that Hepatits C could affect glucose levels. Furthermore, Holden stated that plaintiff looked pale the evening of July 16th.

When plaintiff called in, Holden told plaintiff that he had already spoken with Kathleen Steinbeck, Director of Clinical Services at defendant's Little Rock facility, and that plaintiff should not come back to work until he had a chance to meet with Steinbeck.    Steinbeck told plaintiff he was suspended from work pending further investigation of his absence on July 16-17.

Steinbeck reviewed plaintiff's personnel file prior to the decision to terminate plaintiff.  In the file is an earlier e-mail from Eula Mitchell, the Human Resources Director at the facility, which questions whether plaintiff should be placed on FMLA leave. Mitchell states the e-mail was only in response to noticing that plaintiff had missed three consecutive shifts and was not in response to any particular illness.

Also in the file are a May 8, 2004, note from Dr. Holland, excusing plaintiff from work and a call-in by plaintiff requesting leave from May 14 to May 16, 2004 because of "sick-liver."

According to plaintiff, Butler had called Dr. Holland after the July 16th episode. Plaintiff contends that Dr. Holland told plaintiff to stay off work until Monday when Dr. Holland could see him. Plaintiff saw Dr. Holland on July 19th, although he is unsure of whether it was before or after the meeting when he was terminated.  Dr. Holland stated that he would talk to Steinbeck about what happened and explain that plaintiff had suffered an episode of hypoglycemia and that he was not able to do anything about it. Holland states that he spoke to Steinbeck; Steinbeck denies ever talking to Holland.

Additionally, Butler left a note dated July 19th for Steinbeck concerning the events of July 16-17, explaining what happened and stating that plaintiff had not intentionally abandoned his patients.  It is unclear whether Steinbeck received or considered the note prior to the decision to terminate plaintiff.

Plaintiff met with Steinbeck and Mitchell on July 19th. What occurred at the meeting is in dispute. The termination form stated that plaintiff was terminated for "patient abandonment." Steinbeck and Mitchell state that plaintiff was terminated for leaving his job and not returning. Plaintiff contends that during the meeting he asked if there was any kind of leave he could take because he needed his insurance. Defendant denies that plaintiff mentioned anything about his medical condition or requested any type of leave.

Plaintiff contends that he is entitled to partial summary judgment on liability for his claims of wrongful discharge and the failure to reinstate under the FMLA.

The FMLA entitles an employee to take up to twelve weeks of leave during a twelve-month period due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After completing FMLA leave, the employee is entitled to be restored

to his or her position, or an equivalent one.     29 U.S.C. § 2614(a)(1).

Plaintiff suffers from hepatitis, depression, cirrhosis and hypoglycemia. These are long-term illnesses, which have required treatment by a physician, and according to plaintiff, episodically incapacitate him. Defendant disputes that plaintiff suffers from a "serious medical condition." It states that plaintiff did not have difficulty performing his job duties prior to July 16th; his physician did not place any restrictions on him, and he did not take any medication for the disease.[1]  Defendant further argues that there is a question of fact as to whether plaintiff's medical condition caused his inability to perform the functions of his job, that is, whether his medical condition caused the fainting.

Defendant's argument must be rejected. It is clear from the record that plaintiff suffers from chronic illnesses. He has sought medical treatment for his illnesses, and is under a physician's care for them. *See* 29 C. F. R. § 825.114(a)(2)(iii). It is also clear that hypoglycemia caused the fainting, and that plaintiff's liver malfunction caused the hypoglycemia.

Plaintiff contends that defendant had notice of his serious medical condition. There is support for plaintiff's position that his supervisor that evening, Al Holden, was aware that he had hepatitis. Holden was at least aware that hepatitis can cause blood sugar problems.  There is evidence  that Steinbeck and Mitchell also were aware of plaintiff's condition, or at least on notice that plaintiff had some serious medical condition.  Mitchell had noted that plaintiff had been absent for three consecutive shifts, triggering an inquiry as to whether plaintiff was eligible for FMLA. There was additional information in plaintiff's personnel file indicating liver problems.

"[I]n order to invoke the protections of FMLA, an employee must notify his employer of his 'intention to take leave.' 29 U.S.C. § 2612(e)(2)(B). At a minimum, an

---

[1] Defendant ignores that plaintiff had been on medication for depression.

-4-

employee must give 'at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.' 29 C.F.R. § 825.302(c). While the employee does not have to mention FMLA by name, the employee has an affirmative duty to indicate both the need and the reason for the leave. 29 C.F.R. § 825.302(c). " *Sanders v. May Dept. Stores Co.,*   315 F.3d 940, 944 (8th Cir. 2003). "Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999).

Defendant asserts that plaintiff did not give adequate and timely notice of his request for FMLA leave.   Plaintiff states that the leave was not foreseeable.  In such a case, an employee is required to give notice as soon as it is practical, usually within one or two working days of needing the leave.  29 C.F.R. § 825.303.  Furthermore, notice may be given either in person or by telephone and by the employee or the employee's spokesperson if the employee is unable to do so personally.  *Id.*.

Here, plaintiff called into work around 4:00 a.m., informing Holden that he had problems with his blood sugar.  There is a dispute as to whether plaintiff told Holden that he had passed out.  Additionally, there is a factual dispute as to what further actions plaintiff took in advising defendant.  According to defendant, plaintiff never mentioned any medical problems at the termination meeting.  Plaintiff refutes this, stating that he asked for leave, that Butler had advised Steinbeck of plaintiff's problems, and that Holland spoke to Steinbeck about the incident.  At this time, the Court cannot find as a matter of law  that plaintiff's actions, either at the time of the call, or subsequently, constituted adequate notice.   Had there been sufficient notice, defendant's action in discharging plaintiff, especially without further inquiry, could well be a violation of plaintiff's rights under the FMLA.  *See Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F. 3d 847, 852 (8th Cir. 2002) (plaintiff's request for time off due to "depression again" may be potentially valid request for FMLA leave where employer knew that plaintiff suffering from depression).

Because of there are issues of fact in dispute, summary judgment on the FMLA claims is not appropriate.

Also pending before the Court is plaintiff's motion for extension of time to file a response to defendant's motion for partial summary judgment. Plaintiff seeks until December 24, 2005, to file his response.[2]

Defendant objects, stating that the response and likely reply defendant will file will be submitted to the Court for review close to the trial date of January 23, 2006.

Defendant filed its motion for partial summary judgment on November 16, 2005. Plaintiff, without objection from defendant, was granted a two week extension until December 12, 2005, to file his response. The Court is not persuaded that an additional two weeks is necessary. The parties have already presented their facts to the Court. The Court, therefore, will grant plaintiff until December 19, 2005 to file his response. If defendant desires to file a reply, it shall do so by December 27, 2005.

Accordingly, the motion for partial summary judgment is denied. Plaintiff's motion to extend time is granted in part and denied in part.

IT IS SO ORDERED this12th day of December, 2005.

_____
UNITED STATES DISTRICT JUDGE

---

[2]December 24th is a Saturday. The date the brief would be due is December 27th.